This is an appeal from an order of the Circuit Court of Tuscaloosa County granting summary judgment in favor of Liberty National Life Insurance Company and Guy V. Johnson. The circuit court entered judgment on less than all of plaintiffs' claims, and pursuant to Rule 54 (b), A.R.C.P., determined that there was no just cause for delay, thereby properly posturing this case for our consideration.
Mrs. Barbara Sexton (Mrs. Sexton) and her son Warren P. Sexton (Warren), filed a five-count complaint as amended on September 5, 1979, against Liberty National Life Insurance Company and Guy V. Johnson. Count I alleged that the defendants fraudulently obtained premiums from Mrs. Sexton by making false representations regarding the actual benefits under the policy. Mrs. Sexton contends that Guy Johnson represented to her that he could sell her "a policy that would cover about 80% of any hospitalization expense and that the policy he was offering was Liberty National's best policy."
In actuality, the policies sold by Guy Johnson (Johnson) provided for a fixed daily rate of benefits instead of a percentage of the hospital expenses. Although she admits reading the policy, Mrs. Sexton claims that because she had no particular expertise or education in insurance, she was not aware that the policy was different from the policy explained by Johnson.
In July 1974, Johnson, in his capacity as an agent of Liberty National Life Insurance Company (Liberty National), sold a medical expense policy to Mrs. Sexton for the benefit of her minor son Warren. On January 1, 1977, Johnson sold a second Liberty National policy to Mrs. Sexton for the *Page 20 
benefit of her son Warren. Then, in July 1975, the first policy paid $15.00 on a $25.00 surgical charge incurred by Warren. In June 1977, both policies paid a total of $448.00 on surgical and hospital expenses totalling $746.14. The payment in 1975 represented approximately 60% of the charge. Payment made in 1977 represented about 60% of the expenses incurred. Both of these payments were substantially less than 80% of the medical expenses, but Mrs. Sexton made no inquiry or complaint regarding the insufficient payment of these claims.
However, on July 25, 1978, Warren was seriously injured and hospitalized, incurring $11,280.12 in expenses for which Liberty National issued drafts to the attending hospital in the amount of $1,570.00. These drafts were issued on October 17, 1978, and a few days later Mrs. Sexton contacted agent Johnson, claiming that the policies had not paid enough. She claims that she was not put on suspicion of the differences in the prior payments by Liberty National and the 80% promised by Johnson until after Warren's large medical expense because the discrepancies under the two prior claims were too small to put her on notice.
Count II attempted to allege the tort of outrage. Count III claimed breach of a written contract. Plaintiffs claim Count IV averred a breach of an oral contract and Count V alleged bad faith refusal to pay an insurance policy. Summary judgment was granted as to Counts I, II, IV, and V, leaving pending in circuit court Count III for breach of a written contract.
The sole issue presented for our review is: Did the trial court err in granting summary judgment in favor of Liberty National and Johnson on Counts I, II, IV and V of plaintiffs' bill of complaint? We agree with the trial court's resolution of the summary judgment issue and we affirm.
Implicit in the trial court's resolution of the summary judgment issue is the application of certain principles of law. Summary judgment is appropriate if after the court considers the pleadings, depositions, answers to interrogatories, admissions, and affidavits, there is no genuine issue as to any material fact. First National Bank of Birmingham v. Culberson,342 So.2d 347, 351 (Ala. 1977); Rule 56, A.R.C.P. The scintilla evidence rule also applies to summary judgment motions. If there is the slightest gleam, glimmer, or spark of evidence that would support a party's contention, summary judgment should be denied. In this connection we have said that all reasonable inferences from the facts are to be viewed most favorably to the non-movant. Harold Brown Builders, Inc. v.Jordan Company, 401 So.2d 36 (Ala. 1981); Campbell v. AlabamaPower Co., 378 So.2d 718 (Ala. 1979); Tolbert v. Gulsby,333 So.2d 129 (Ala. 1976); Donald v. City National Bank of Dothan,295 Ala. 320, 329 So.2d 92 (1976). Plaintiffs contend that they certainly presented a genuine issue of material fact, as well as a scintilla, and, therefore, summary judgment was inappropriate.
On the other hand, the defendants contend that plaintiffs have only alleged fraud in several of its many aspects. Count I, they say, is a claim that plaintiffs were defrauded because Johnson, as agent for Liberty National, represented falsely that he would provide Liberty National's best policy that would pay 80% of Warren's hospital expenses and failed to deliver such a policy and failed to pay the amount promised. The tort of outrage contention, they say is merely a statement that defendants sold policies to plaintiffs with no intention of paying them. The fraud of the bad faith failure to pay an insurance claim addresses the action of the defendants in failing to pay claims without a justifiable legal basis.
As to each species of fraud, the defendants claim that the bar of the statute of limitations applies. Code 1975, § 6-2-39; Code 1975, § 6-2-3. Code 1975, § 6-2-39 provides that claims such as that mentioned above must be commenced within one year. Code 1975, § 6-2-3, attempts to provide against the harshness of such a rule by providing the following exception:
 In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as *Page 21 
having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action.
The crucial issue under Code 1975, § 6-2-3, is: When did plaintiffs discover the fraud they allege against the defendants? Additionally, we must decide whether the discovery of fraud issue in this case is one that must be submitted to a jury.
In State Security Life Insurance Co. v. Henson, 288 Ala. 497,504, 262 So.2d 745, 751 (1972), this court stated:
 Whether, within one year prior to filing suit, plaintiff had knowledge of such facts, or knowledge of facts which would lead a reasonable man to make diligent inquiry which would have enabled plaintiff to discover the fraud alleged in Count IV was a question for determination by the jury.
But this court has decided also that under certain circumstances the time of discovery of fraud can be determined as a matter of law. In Seybold v. Magnolia Land Company,376 So.2d 1083 (Ala. 1979), this court upheld a directed verdict for the defendant on the ground that the fraud alleged in the complaint was barred by the applicable statute of limitations. Speaking through Mr. Justice Jones, the court analyzed the issue as follows:
 It is well settled that an action based upon fraudulent misrepresentation must be brought within one year of the discovery thereof, or within one year of the time when it should have been discovered. Cities Serv. Oil Co. v. Griffin, 357 So.2d 333
(Ala. 1978); Johnson v. Shenandoah Life Insurance Co., 291 Ala. 389, 281 So.2d 636 (1973); State Security Life Insurance Co. v. Henson, 288 Ala. 497, 262 So.2d 745 (1972).
 Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that claimant knew of facts which would put a reasonable mind on notice of the possible existence of fraud. Jefferson County Truck Growers Ass'n. v. Tanner, 341 So.2d 485 (Ala. 1977).
 The evidence in this case shows without conflict that more than one year prior to filing of suit Plaintiff had knowledge of facts sufficient to put a prudent person on inquiry, which in the exercise of proper prudence and diligence would have enabled that person to learn of the alleged fraud. A directed verdict for the Defendant on this issue was therefore proper.
Seybold, at 1087.
In the very case on which plaintiffs put much reliance, StateSecurity Life Insurance Co. v. Henson, supra, this court held that three of plaintiff's counts charging fraud should not have been allowed to go to the jury and one should have been allowed to go to the jury. In commenting on why Counts II and III of plaintiff's complaint should not have gone to the jury, this court said: "It seems inescapable that knowledge of such facts would provoke a reasonable man to make inquiry, as plaintiff was so provoked." Again, in that same case, this court said: "The evidence is without conflict that more than one year prior to August 2, 1968, plaintiff possessed knowledge of facts which would lead a reasonable man to make diligent inquiry." Henson, at 288 Ala. at 503, 262 So.2d at 750.
We opine that when Mrs. Sexton was paid only 60% of the surgical charge in 1975, and only 60% of the hospital expenses in 1977, she had sufficient facts to require her to investigate further, which would have enabled her to learn of the alleged fraud. A simple mathematical calculation would have revealed to Mrs. Sexton that she was not paid 80%, as she says was promised by Johnson. Therefore, plaintiffs' fraud charge, especially Count I, was clearly barred by the one-year statute of limitations provided for in Code 1975, § 6-2-39; Code 1975, §6-2-3. We reject Mrs. Sexton's contention that she was not put on notice of the fraud because the payments were de minimis. We note particularly that the alleged underpayments were made on two separate occasions. *Page 22 
At the time that defendants' motion for summary judgment was argued and the appellate briefs written, we had not decided whether the tort of outrage or the tort of bad faith failure to pay an insurance claim would be allowed in this state. The tort of outrage was given life and breath in American Road ServiceCompany v. Inmon, 394 So.2d 361 (Ala. 1981). The tort of bad faith failure to pay an insurance claim was given vitality inChavers v. National Security Fire and Casualty Co., 405 So.2d 1
(Ala. 1981). At oral argument, plaintiffs agreed that the facts in this case would not support the tort of outrage and careful review of the record persuades us that this assessment is correct.
In Chavers, supra, we said the plaintiff could recover a direct claim against the insurer if it intentionally refused to settle where there was: (1) no lawful basis for refusal coupled with actual knowledge of that fact; or, (2) intentional failure to determine whether or not there was a lawful basis for such refusal. The facts in this case simply do not fit the Chavers
standard. Here, the defendants actually paid under the policy that was issued to the plaintiffs, albeit, not for the full amount that plaintiffs said was promised. The plaintiffs say that defendant did not pay any surgical expense for the last hospitalization and, therefore, there was a refusal which brings them within the standards set forth in Chavers. Taken in the context of this case, we do not agree. Having paid a substantial part of the claim, the failure to pay another part could well have been a clerical error and plaintiffs are still in court on their suit on the policy contract and should prevail if the facts in that case are within the coverage of the policy contract.
Finally, we must determine if summary judgment should have been granted on Count IV of plaintiffs' complaint allegedly averring a breach of an oral contract. There is considerable doubt as to whether plaintiffs have averred properly a breach of an oral contract. However, considering that in this jurisdiction our rules of pleading are given a liberal construction, as are the rules from which they are drawn, we will consider plaintiffs' appeal on this point. Conley v.Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In Smithv. Protective Life Insurance Company, 355 So.2d 728
(Ala.Civ.App. 1978), the Alabama Court of Civil Appeals followed this court's decision in Hartford Fire InsuranceCompany v. Shapiro, 270 Ala. 149, 117 So.2d 348 (1960), when it said:
 It is the rule that if the policy is accepted by the insured, he is bound thereby even though the policy does not correspond to the preliminary negotiations. The oral negotiations for the policy are merged in the accepted policy.
Smith, at 730.
This principle is well embedded in our law. Vredenburgh v.Liberty Nat. Life Ins. Co., 246 Ala. 251, 20 So.2d 207 (1944);Mutual Life Ins. Co. of New York v. Barrett, 215 Ala. 142,110 So. 275 (1926); Georgia Home Insurance Co. v. Warten, 113 Ala. 479,22 So. 288 (1897); Metropolitan Life Ins. Co. v. Goodman,10 Ala. App. 446, 65 So. 449 (1914). This is not to say that an agent could not make a promise so independent of the policy contract of insurance that suit could not have been maintained on the independent promise. Hartford Fire Insurance Company v.Shapiro, supra. See also Aspinwall v. Gowens, 405 So.2d 134
(Ala. 1981).
The facts in this case do not support such an independent promise. Therefore, we are compelled to conclude that summary judgment was appropriate on Count IV for breach of oral contract. Mrs. Sexton received the policy calling for less than 80% payment of expenses and has not introduced sufficient evidence to overcome the presumption that she knew the terms of the contract.
Having found that there was no genuine issue of material fact which would make summary judgment inappropriate, or the least scintilla of evidence to support plaintiffs' allegations under Counts I, II, IV, and V of their complaint, we hold that the *Page 23 
judgment of the trial court is due to be affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON and EMBRY, JJ., concur.